# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| RICHARD JONES, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CLAIBORNE COUNTY, TENNESSEE, )<br>DEPUTY STEVE CLINE, and )<br>DEPUTY JIMMY SEALS, )<br>    Defendants. ) | No. 3:05-CV-580<br>(Phillips) |

## MEMORANDUM OPINION

This lawsuit arises out of a domestic disturbance call that led to Jones' arrest for aggravated assault and resisting arrest. A criminal jury found Jones not guilty of aggravated assault against his wife, but guilty of resisting arrest. Plaintiff Richard Jones has sued Claiborne County and Deputies Steve Cline and Jimmy Seals, in their individual capacities, under 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution. Jones alleges: (1) that he was arrested and prosecuted for aggravated assault without probable cause; (2) that the deputies used excessive force in making his arrest; and (3) that Claiborne County had a policy or custom that proximately caused these constitutional violations. The defendants have jointly moved the court for judgment as a matter of law on plaintiff's claims. For the reasons which follow, defendants' motion for summary judgment will be granted.

1

## Factual Background

This lawsuit arises out of a domestic dispute between Richard and Tina Jones. Some of the incident was caught on audiotape when Tina Jones called 911 and the dispatcher remained on the line with her during the incident. On December 25, 2004, at 3:36 p.m. Tina Jones called Claiborne County 911. Following are excerpts from that call:

Tina Jones: Ma'am, would you send the police to 193 Woodview Circle. My husband's got a sawed-off shotgun. Richard Jones. Send a sheriff out here right now.

Dispatcher: Okay, ma'am, where's he at?

Tina: He's right here in the yard. I was gonna leave and he messed my car up where I can't, and then he's got a sawed-off shotgun on me.

. . .

Richard Jones: You let the son of a bitches come out here.

One minute later, Claiborne County Deputy Steve Cline was dispatched to the scene. The following conversations occurred prior to Deputy Cline's arrival on the scene:

Dispatcher: Okay. I've got officers en route to you.

Tina: I tried to leave and he went down there and done something to my car where I can't leave.

Dispatcher: Okay, ma'am. What's your . . .

Tina: And he's gonna hurt me. I can tell you that.

Dispatcher: Okay, where . . .

Tina: He's gonna hurt me. He's gonna kill me is what he's gonna do.

Richard: Oh no. There ain't nobody gonna (inaudible)

2

. . .

Tina: I'm telling you, he is crazy.

Dispatcher: Ma'am, what's your . . .

Tina: He yells at me from the time I get up til I go to bed at night. And then when I try to get away from him, he won't let me leave.

Dispatcher: Okay ma'am, what's your name?

Tina: Tina Jones

Dispatcher: Okay, what, where is he at now?

Tina: He's sitting in here in the dining room with a shotgun in his lap.

Richard: Tell 'em to come on. Not afraid.

Tina: See. He is. He's crazy I'm telling you.

Richard: Tell 'em they better have a warrant when they come.

Tina: You hear him?

Richard: You've got to have a damn warrant.

Tina: See, listen at him. He is crazy, I'm telling you.

Richard: (Inaudible)

Tina: He done something to my car. The car's in my name, it ain't in his name.

Richard: I paid for the son of a bitch.

Tina: No, you haven't Richard. That's my car.

Richard: Don't make no difference.

Dispatcher: Okay, ma'am, has he . . .

Tina: He's threatened to kill me, yes ma'am, he's threatened to kill me.

3

| | |
|---|---|
| Richard: | (Inaudible) to knock my glass out. |
| Tina: | I threatened to knock the glass out of his truck if you didn't fix my car. I just want him to fix my car where I can leave. That's all I want him to do. |
| Dispatcher: | Okay ma'am, so what's that exactly is he saying? Is he saying that you're not going to be . . . |
| Tina: | He's saying that I'm not gonna take the car and I'm not gonna leave. |
| | . . . |
| Dispatcher: | Okay. Ma'am has he made any other types of threats? Like if the officer . . . |
| Tina: | He said he was gonna kill me. |
| Dispatcher: | Just you? |
| Tina: | Yes. |
| | . . . |
| | The following occurs as Deputy Cline arrives on the scene: |
| Cline: | Where's he at right now? |
| Tina: | He's in the house. Is that you Steve? |
| Dispatcher: | Ma'am, be sure and tell him he's got the gun. |
| Tina: | Steve, he's got a gun, don't come up here. Just take me Steve. Please take me and get my car, get me a warrant. |
| Cline: | Calm down. |
| Tina: | Please don't. |
| Cline: | What's his first name? |
| Tina: | I don't want nobody to get hurt. |
| Cline: | What's his name? What's his name? |

4

| | |
|---|---|
| Tina: | Richard. Don't go in there. |
| Cline: | Okay. (Inaudible) |
| Tina: | He's got a sawed-off shotgun. Steve, I don't want you to get hurt. Please, God, Steve, don't go up there. He's crazy, I'm telling you. Please don't let Steve go in there by himself. Gonna get somebody hurt. Richard will kill him, I know he will. |
| Cline: | Richard? |
| Tina: | Oh please, Steve, don't get hurt. |
| Cline: | Richard, this is Sgt. Cline with the Sheriff's Department. |
| Dispatcher: | Tina? Okay, just talk to me and let Steve try to talk to Richard, okay? Until some more officers get there. Do you know Steve? |
| Tina: | Yes, I know him. |
| Dispatcher: | Okay. Does Richard know him? |
| Tina: | Yes. |
| Dispatcher: | Okay, well that's good now Richard . . . |
| Tina: | It ain't either. He hates him. |
| Cline: | Come out here and talk to me. |
| Richard: | . . . my house without a warrant. |
| | . . . |
| Richard: | (Inaudible) Somebody's gonna go out feet first. |
| Tina: | Steve, don't go in there. |
| Cline: | We can do this a little different, Richard. |
| Richard: | No we can't. |
| Cline: | Yeah we can. |

Richard: (Inaudible)

Cline: Richard, I need to talk to you. Well, I need to come in there and talk to you.

. . .

Later, deputies Jimmy Seals and James Martin arrived. After they arrived, Deputy Cline continued trying to talk Jones into coming out of the trailer and giving his side of the story. While speaking with Jones, Deputy Cline could not see him.

911 contacted Sheriff Schultz because Jones wanted to speak with him. A short time later, the telephone began ringing in the residence. Deputy Cline saw Jones come into the living room area from the back of the house. Deputies Cline and Seals saw that Jones no longer had the shotgun in his hands. They entered the residence, took Jones down, and placed him in handcuffs. As they approached Jones, he was swinging his hands like he was trying to hit them. Jones grabbed Deputy Seals by his ears as they went to the ground. Jones was handcuffed and placed in Deputy Cline's vehicle. After the arrest Deputy Cline obtained a statement from Tina Jones in her handwriting. She wrote:

> I said if you don't fix my car I was going to break ever (sic) window in his truck out. He got in the truck + pulled out a shot-gun + pointed at me + said he would blow my f—ing head off.

Jones was charged with aggravated assault on Tina Jones and resisting arrest. Trial was held on the charges in the Claiborne County Criminal Court on December 12, 2005. Tina Jones was called by the State as to the aggravated assault charge. She

6

was still living with Jones at the time of trial. During her testimony, she recanted her original statement to the deputies, and further testified that the reason she made the original statement was that she was "mad." Deputies Cline and Seals testified for the State as to the resisting arrest charge. The jury acquitted Jones on the aggravated assault charge and convicted him on the resisting arrest charge.

Jones has sued Claiborne County and Deputies Steve Cline and Jimmy Seals, in their individual capacities, under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution. Specifically, Jones alleges: (1) that he was arrested and prosecuted for aggravated assault without probable cause; (2) that the deputies used excessive force in making his arrest; and (3) that Claiborne County had a policy or custom that proximately caused these constitutional violations. The defendants assert that because Jones was convicted of resisting arrest, the *Heck* doctrine bars him from pursuing an excessive force claim; issue preclusion bars him from relitigating the facts that would support his excessive force claim; the individual defendants are entitled to qualified immunity; and there is no evidence of a policy or custom of Claiborne County of deliberate indifference regarding officer training.

## **Analysis**

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court

must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

Excessive Force Claim

With respect to the excessive force claim, the individual officers assert that they are entitled to summary judgment on any of three alternative grounds: (1) the *Heck* doctrine bars Jones from pursuing an excessive force claim where he has been found guilty of resisting arrest; (2) issue preclusion bars Jones from relitigating the facts that would support his excessive force claim; or (3) the individual defendants are entitled to qualified immunity.

The court finds that the *Heck* doctrine bars Jones' excessive force claim. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the plaintiff had been convicted of voluntary manslaughter in his wife's death. While appealing his criminal conviction, the plaintiff filed a § 1983 action for damages against the prosecutors and an investigator. Plaintiff alleged that defendants had engaged in an unlawful, unreasonable and arbitrary investigation which led to his arrest. In considering whether plaintiff could bring a § 1983 action while the criminal conviction remained intact, the Supreme Court noted the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* at 584. The Court held that in order to recover damages for allegedly unconstitutional conviction or imprisonment, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. The Court went on to state that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

> More importantly, in footnote 6, the Court gave as an example:
>
> [A] § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful - would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace

> officer from effecting a lawful arrest. . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning *res judicata*, the § 1983 action will not lie.

*Id.* at 487, n.6.

Applying these principles to the present action, it is clear that in order to prevail on his § 1983 action, Jones would have to negate an element of the offense of which he has been convicted. Jones was convicted by a jury of resisting arrest. In Tennessee, the crime of resisting arrest involves the use of force against a law enforcement officer in order to intentionally prevent or obstruct the law enforcement officer from effecting a stop, frisk, arrest, or search of any person. Tenn. Code Ann. § 39-16-602(a). At his criminal trial, Jones denied that he had resisted the officers. However, Deputies Cline and Seals testified that Jones swung at them and that he grabbed Deputy Seals by the ears. The jury obviously believed the version of events related by Deputies Cline and Seals, and disbelieved the version of events related by Jones.

Success on Jones' excessive force clam would necessarily imply the invalidity of his state resisting arrest conviction. The struggle between Jones and the deputies gave rise to both Jones' resisting arrest conviction and the excessive force claim, and "the two are inextricably intertwined." *See Cummings v. City of Akron,* 418 F.3d 676, 682-83 (6th Cir.

2005).  Accordingly, Jones' claim of excessive force falls within the confines of *Heck*, which bars his § 1983 action because he has not successfully challenged his state conviction.

Even assuming that Jones' claim of excessive force is not barred by the *Heck* doctrine, the court finds that the individual defendants are entitled to qualified immunity as a matter of law.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  The court, when ruling on a qualified immunity issue, must consider whether, taken in a light most favorable to the party asserting injury, the facts alleged show the officer's conduct violated a constitutional right.  *Siegert v. Gilley,* 500 U.S. 226, 232 (1991).  If no constitutional right would have been violated were the allegation established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established.  The contours of the right must be sufficiently clear such that the reasonable officer would understand that what he is doing violated that right.  *Graham v. Connor,* 483 U.S. 635, 640 (1987). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Wilson v. Lane,* 526 U.S. 603, 615 (1999).  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Maley v. Briggs,* 475 U.S. 335, 341 (1986).

In the instant case, no reasonable jury could find that the force used by Deputies Cline and Seals in arresting Jones was excessive. This was a domestic dispute call; the deputies were advised that Jones was armed; Jones refused to come out and talk; Jones threatened to kill the deputies if they entered the residence; the deputies rushed Jones and took him to the ground when they saw an opportunity to do so without anyone getting hurt; and Jones fought the officers when they tried to take him to the ground. Thus, Jones himself was the cause of the force used in his arrest, and the deputies used only the amount of force that was reasonable and necessary to control Jones to prevent him from injuring himself and others. In order to prevail on his § 1983 excessive force claim, as he has alleged it, Jones must prove that the deputies employed excessive force without provocation. This he cannot do, and the individual defendants are entitled to qualified immunity for their actions in effecting Jones' arrest.

## False Arrest Claim

With respect to the false arrest claim, the individual defendants assert that they are entitled to qualified immunity. The first issue to be determined by the court is whether the deputies had probable cause to arrest Jones.

In *Lyons v. City of Xenia,* 417 F.3d 565, 573 (6th Cir. 2005), the Sixth Circuit explained the test for determining whether an officer has probable cause to make an arrest:

> It has long been true that the Fourth Amendment requires probable cause for an arrest. *See Crockett v. Cumberland College,* 316 F.3d 571, 5800 (6th Cir. 2003). And it has long been true that this inquiry turns on whether the "facts and circumstances within the officer's knowledge . . . are sufficient

> to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). Courts look at this question through the lens "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long,* 275 F.3d 544, 550 (6th Cir. 2001). . . .

Section 39-13-101 of the Tennessee Code defines assault as either: (1) intentionally, knowingly or recklessly caus[ing] bodily injury to another; (2) intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury; or (3) intentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative. In addition, in the context of domestic abuse, Tenn. Code Ann. § 36-3-619(a) states "[I]f a law enforcement officer has probable cause to believe that a person has committed a crime involving domestic abuse . . . the preferred response of the officer is arrest." More specifically, the preferred response is the arrest of the "primary aggressor." *Id.*

Under these principles, it is clear that Deputies Cline and Seals had probable cause to arrest Jones for aggravated assault against Tina Jones. When Deputy Cline was first dispatched to the Jones' resident, he was told by the dispatcher: "I have a domestic. Subject's armed with possible sawed-off shotgun." It is clear from listening to the 911 audiotape that Tina Jones was in fear for her life and the lives of the officers. Moreover, Tina Jones wrote out a statement immediately following the arrest of her husband in which she stated that her husband pointed a gun at her and said "he would blow my f—ing head off." Based upon these facts, Deputies Cline and Seals had probable cause to arrest Jones

13

for the criminal offense of aggravated assault. Based upon the fact that probable cause existed, there is no underlying constitutional violation. Thus, Jones cannot establish the first prong of the qualified immunity test – that a constitutional violation occurred, and the deputies are entitled to qualified immunity on his claim of false arrest.

Claims Against Claiborne County

In view of the court's disposition of Jones' claims against the individual defendants, it need not address the liability of Claiborne County. *See Watkins v. City of Battle Creek,* 273 F.3d 682 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendant cannot be held liable under § 1983). Having found no constitutional violations could be established, the court finds that Claiborne County is entitled to judgment as a matter of law on Jones' claim of inadequate training.

**Conclusion**

For the reasons stated above, defendants' motion for summary judgment [Doc. 13] will be **GRANTED**, and plaintiff's § 1983 action against defendants will be dismissed.

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge